UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| J&M PLASTICS, INC., Individually and on Behalf of all Others Similarly Situated, | § § § § | |
| *Plaintiffs,* | § § | CASE NO. __21-206_____ |
| v. | § § | |
| MIDAMERICAN ENERGY SERVICES, LLC, | § § § | |
| *Defendant.* | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

Plaintiffs J&M Plastics, Inc. ("J&M Plastics"), Individually and on Behalf of all Others Similarly Situated, by and through the undersigned counsel, bring this class action against Defendant MidAmerican Energy Services, LLC ("MidAmerican"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specific to J&M Plastics, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action on behalf of MidAmerican customers who were charged excessive electricity prices during and because of Winter Storm Uri of February 2021 (the "winter storm"). MidAmerican provided electricity to customers in Texas. MidAmerican passed on additional ancillary and ERCOT-assessed charges directly onto customers with fixed price plans, resulting in grossly high electricity bills. MidAmerican minimized its own exposure to the Texas power grid's price spikes during the winter storm and took advantage of customers at a vulnerable time, as they experienced power outages and other hardships during the winter storm.

2. Nearly two months after the winter storm, J&M Plastics received a statement from MidAmerican that included several new and unusual line-items. The line-items, "Supplemental Ancillary Services" dated the week of the winter storm, totaled $53,661.78. The charges for Supplemental Ancillary Services alone were nearly 3 times more than the amount of J&M Plastics' typical total monthly bill.

3. MidAmerican has caused substantial harm to J&M Plastics and the proposed class by charging excessive electricity prices during and because of a disaster and in breach of its contract to provide fixed rate electricity.

## THE PARTIES

4. Plaintiff J&M Plastics, Inc. is incorporated in Texas with its principal place of business located at 1121 Industrial Drive, Royse City, Collin County, Texas 75189. J&M Plastics, Inc. also includes its agents, representatives, assignees, and employees.

5. MidAmerican Energy Services, LLC is a Delaware limited liability company with its principal place of business located at 666 Grand Avenue, Des Moines, Iowa 50309. It maintains a registered agent, CT Corporation System, who can be served at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. MidAmerican Energy Services, LLC also includes its agents, representatives, assignees, and employees and any predecessor and successor entities.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and each of the proposed classes contains more than 100 members.

7. This Court has personal jurisdiction over MidAmerican because MidAmerican has substantial contacts with Texas. At all relevant times, MidAmerican purposefully availed itself of the benefits and protections of Texas by continuously and systematically conducting business so substantial as to render it at home there. MidAmerican markets and sells electricity throughout Texas, is registered to provide electricity in Texas, and maintains a registered agent in Texas.

8. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to the alleged claims occurred or originated in this District. J&M Plastics is physically located and received both energy and all related invoices and correspondence in Collin County, Texas.

## FACTUAL BACKGROUND

9. J&M Plastics operates an injection molding facility that manufactures recycled plastics.[1] It relies on electricity to power its equipment and plant and received its electricity from MidAmerican. J&M Plastics has been a MidAmerican customer since first entering into a Retail Electric Supplier Agreement with MidAmerican Energy Company in December 2011.[2] MidAmerican added Schedules A and B to the Agreement on November 16, 2016 ("Agreement" in its entirety).

10. MidAmerican is a part of Berkshire Hathaway Energy. It supplies electricity in deregulated markets throughout the United States.[3] It has 60,000 customers of which about 15,000 are commercial, residential, and industrial customers located in Texas.[4]

---

[1] J M PLASTICS INC., http://www.jandmplastics.com/ (last visited June 2, 2020).
[2] J&M Plastics originally contracted with MidAmerican Energy Company. It appears MidAmerican Energy Services, LLC was created in 2015 to service the deregulated energy markets.
[3] *Market Areas*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/AboutMidAmerican/MarketAreas
[4] *A Berkshire Hathaway Energy Company*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/AboutMidAmerican/WhoAreWe; https://www.eia.gov/electricity/sales_revenue_price/pdf/table6.pdf;

11. Pursuant to the Agreement, MidAmerican was to provide J&M Plastics with electricity at the "Fixed Price" of $0.0395 per kWh. Ex. **A**, Agreement.

12. The Agreement specifies that not only will the Fixed Price "be applied to all usage within the respective Pricing Period" but also:

> ***The Fixed Price*** and/or the variable Price Adder ***includes costs associated with*** line loss based on applicable transmission and delivery tariff loss factors, renewable compliance costs, ***all charges assessed by ERCOT***, in addition to congestion (including local, inter-zonal and HUB-to-zone congestion charges*) and Ancillary charges* . . . . The term "Ancillary" means wholesale electric services, capacity, Regulation Up Service Charges, Regulation Down Service Charges, Responsive Reserve Service Charges, Non-Spinning Reserve Service Charges, Reliability Unit Commitment Charges and other costs required to facilitate delivery of electricity to Customer's Delivery Points.

Ex. **A**, Schedule B, at 1 (emphasis added). Therefore, the Fixed Price charged to J&M Plastics was to include costs associated with ERCOT and any "Ancillary" charges. *Id*.

13. J&M Plastics originally chose MidAmerican as its electricity provider because it promoted and advertised its Agreement with a Fixed Price as a nice, simple, and straightforward approach to offering electricity. According to J&M Plastics, MidAmerican "flowed with assurances." J&M Plastics purposefully switched over to MidAmerican to avoid a variable rate plan after experiencing the price fluctuations that occurred during the winter freeze of 2011.[5]

14. In February 2021, years after the Agreement was entered into, Winter Storm Uri wreaked havoc in Texas. More than 4.5 million electricity customers in Texas were left without power.[6] The winter storm began on February 11, 2021, and ended on February 19, 2021. The

---

https://www.eia.gov/electricity/sales_revenue_price/pdf/table7.pdf;
https://www.eia.gov/electricity/sales_revenue_price/pdf/table8.pdf
[5] Erin Douglas, et al., *Texas Leaders Failed to Heed Warnings that Left the State's Power Grid Vulnerable to Winter Extremes, Experts Say*, TEXAS TRIBUNE (Feb. 19, 2021), https://www.texastribune.org/2021/02/17/texas-power-grid-failures/.
[6] Jeffrey Ball, *The Texas Blackout is the Story of a Disaster Foretold*, TEXAS MONTHLY (Feb. 19, 2021), https://www.texasmonthly.com/news-politics/texas-blackout-preventable/.

winter storm brought cold weather, including sub-freezing temperatures, snow, and ice, to a region ill-equipped to handle such conditions.

15. On February 12, 2021, Governor Greg Abbott declared a state of disaster in all Texas counties due to the winter weather. Ex. **B**, Proclamation. President Joseph R. Biden, Jr. later approved an emergency declaration for the same.[7] Texas had an additional disaster declaration in place at the time for the novel coronavirus.[8]

16. On February 14, 2021, the entire state of Texas was placed under a winter storm warning.[9] Weather forecasters predicted the inclement weather as early as February 5, 2021, giving power grid operators, energy companies, and state officials ample time to prepare.[10]

17. With the increased electricity demand due to the winter storm, two major decisions were implemented to prevent the power grid from a collapse.

18. On February 14, 2021, the Electric Reliability Council of Texas ("ERCOT") announced rolling outages would be imposed to avoid a complete system breakdown.[11] ERCOT manages the power grid and flow to 90% of Texas. The outages were expected to last 45 minutes per area, but instead, some Texans went days without power.[12] As a result, many Texans felt blindsided and alone as they dealt with the crisis.

---

[7] *President Joseph R. Biden, Jr. Approves Texas Disaster Declaration* (Feb. 20, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/02/20/president-joseph-r-biden-jr-approves-texas-disaster-declaration/.
[8] *Governor Abbott Extends COVID-19 Disaster Declaration – February 2021* (Feb. 4, 2021, 10:05 a.m.), https://gov.texas.gov/news/post/governor-abbott-extends-covid-19-disaster-declaration-february-2021
[9] Mireya Villarreal, *All 254 Texas Counties under Winter Storm Warning as Arctic Blast Heads East*, CBS NEWS (Feb. 14, 2021, 6:49 p.m.), https://www.cbsnews.com/news/texas-snow-winter-storm-warning-arctic-blast-2021-02-14/.
[10] Andrew Freedman, *Meteorologists for Texas Grid Operator Warned of the Winter Storm's Severity*, WASHINGTON POST(Feb. 19, 2021, 3:51 p.m.), https://www.washingtonpost.com/weather/2021/02/19/texas-cold-early-warning/.
[11] Megan Menchaca, *Texas' Grid Operator Warns Rolling Blackouts are Possible as Winter Storm Escalates Demand for Electricity*, TEXAS TRIBUNE(Feb. 14, 2021, 9:00 p.m.), https://www.texastribune.org/2021/02/14/texas-rolling-blackouts/.
[12] Cassandra Pollock, *When will Texans Get their Power Back? Officials Don't Know,* TEXAS TRIBUNE (Feb. 16, 2021, 5:00 p.m.), https://www.texastribune.org/2021/02/16/texas-ercot-power-outage/.

19. Rolling blackouts were last carried out in Texas a decade ago.[13] The Texas energy industry failed to address the winter weatherization issues that occurred in 2011.[14]

20. On February 16, 2021, the Public Utility Commission ("PUC") directed ERCOT to apply the high system-wide offer cap that raised electricity prices to $9,000 per MWh.[15] The imposition of the rate cap was meant to incentivize generators to supply power to the grid. Experts have calculated ERCOT received at least a $16 billion windfall after keeping the rate cap in place for an extra 32 hours.[16] The PUC has refused to reprice electricity.[17]

21. Overall, during the winter storm, nearly $50 billion in electricity sales were carried out, which is equal to the previous three years' combined sales.[18]

22. On April 7, 2021, nearly two months after the winter storm, J&M Plastics received an atypical invoice from MidAmerican. The invoice contained the usual charges for Generation Supply (set at the Fixed Price), Gross Receipts Reimbursed, and PUC Assessment. However, the invoice also included eight additional charges all labelled as Supplemental Ancillary Services. The invoice from April 2021 shows the following:

---

[13] Brian K. Sullivan and Naureen S. Malik, *5 Million Americans have Lost Power from Texas to North Dakota after Devastating Winter Storm*, TIME (Feb. 15, 2021, 10:55 a.m.), https://time.com/5939633/texas-power-outage-blackouts/#:~:text=5%20Million%20Americans%20Have%20Lost,on%20Feb.%2015%2C%202021.

[14] Erin Douglas, et al., *Texas Leaders Failed to Heed Warnings that Left the State's Power Grid Vulnerable to Winter Extremes, Experts Say,* TIME (Feb. 19, 2021), https://www.texastribune.org/2021/02/17/texas-power-grid-failures/.

[15] E-mail from ERCOT to Market Participants (Feb. 16, 2021, 6:04 PM), http://www.ercot.com/services/comm/mkt_notices/archives/5221.

[16] Mitchell Ferman, *Texas Will Not Fix ERCOT's $16 Billion Power Billing Mistake*, TEXAS TRIBUNE (March 5, 2021, 12:00 p.m.), https://www.texastribune.org/2021/03/05/texas-ercot-electric-bills/.

[17] *Id.*

[18] Will Englund and Neena Satija, *As Texans Went Without Heat, Light or Water, Some Companies Scored a Big Payday*, WASHINGTON POST (Feb. 27, 2021, 7:00 a.m.), https://www.washingtonpost.com/business/2021/02/27/texas-power-winners-losers/.

| Description | Quantity | Unit of Measure | Unit Price | Total Price |
|---|---|---|---|---|
| Generation Supply | 360,487 | kWh x | 0.039500 | 14239.24 |
| 02/14/2021 Supplemental Ancillary Services | 1,846.13 | kWh x | 0.644780 | 1190.35 |
| 02/15/2021 Supplemental Ancillary Services | 5,813.33 | kWh x | 1.058630 | 6154.17 |
| 02/16/2021 Supplemental Ancillary Services | 6,667.43 | kWh x | 1.555380 | 10358.39 |
| 02/17/2021 Supplemental Ancillary Services | 3,975.53 | kWh x | 2.294730 | 9122.77 |
| 02/18/2021 Supplemental Ancillary Services | 4,860.00 | kWh x | 2.693650 | 13091.14 |
| 02/19/2021 Supplemental Ancillary Services | 4,169.03 | kWh x | 1.892870 | 7891.43 |
| 02/20/2021 Supplemental Ancillary Services | 6,132.60 | kWh x | 0.819480 | 5025.54 |
| 02/21/2021 Supplemental Ancillary Services | 8,889.75 | kWh x | 0.093140 | 827.99 |
| Gross Receipts Reimb | | | | 726.54 |
| PUC Assessment | | | | 113.19 |
| **Subtotal Energy Supply Charges** | | | | **$68,740.75** |

Ex. **C**, April 2021 Invoice. J&M Plastics was charged a total of $74,834.91 with $53,661.78 in Supplemental Ancillary Services. *Id*. MidAmerican neither defined Supplemental Ancillary Services in the Agreement nor provided any explanation of the additional charges.

23.  The April 2021 invoice far exceeded J&M Plastics' average monthly invoice. For example, in March 2021, J&M Plastics paid $15,889.50 with no Supplemental Ancillary Services. The invoice from March 2021 shows the following:

| Description | Quantity | Measure | Unit Price | Total Price |
|---|---|---|---|---|
| Generation Supply | 250,785 | kWh x | 0.039500 | 9906.01 |
| Gross Receipts Reimb | | | | 105.99 |
| PUC Assessment | | | | 16.51 |
| **Subtotal Energy Supply Charges** | | | | **$10,028.51** |

Ex. **D**, March 2021 Invoice. The March invoice appeared as a typical bill with one Generation Supply charge that applied a Fixed Price of $0.0395 per kWh.

24.  During the winter storm, J&M Plastics conserved electricity usage, only having the minimal amount of machinery running idle to keep the plant and equipment from freezing.

25.  MidAmerican waited until April 2021 to pass on the winter storm expenses to J&M Plastics as a Supplemental Ancillary Services in its invoice. Ex. **C**. From February 14 to 21, 2021, J&M Plastics was charged an additional $0.093 to $2.69 per kWh for electricity. *Id*.

26.  MidAmerican was aware of the possibility of price fluctuations and spikes, given the historical impact of inclement weather on electricity. In Summer 2019 and Winters 1989, 2011, and 2014, electricity prices soared because of weather. Indeed, MidAmerican provided customers

with the option of selecting service plans with a Fixed Price to avoid ERCOT price volatility.[19] MidAmerican even acknowledges on their website that "[a]ncillary costs are market-driven and can increase significantly during extreme weather events."[20]

27. On April 28, 2021, J&M Plastics made a good faith payment on the April 2021 invoice and requested that the Supplemental Ancillary Services charges be removed or corrected.

28. MidAmerican replied with a boilerplate denial letter stating that the "supplemental ancillary charges reflect additional ancillary costs assessed by . . . ERCOT[] for reliability functions performed during the February winter storm event." MidAmerican cited a provision in the Agreement to allegedly justify the additional charges:

> Any future changes in the business practice or business protocols of the Delivery Company, RTO, or ISO; *Ancillary charges* or applicable Delivery charges or transmission tariffs *that affect the items included in the applicable Fixed Price* and/or Variable Price, as defined in this Schedule B, may be incorporated herein as a separate adjustment as of the effective date on which the change occurs or thereafter.

Ex. **A**, Schedule B, at 2 (emphasis added).

29. In a further attempt to justify the additional charges, MidAmerican posted its answers to frequently asked questions about the Texas-ERCOT grid emergency on its website. MidAmerican specifically ignored the terms of the Agreement and Fixed Price and informed customers that "MidAmerican Energy Services **will not** increase the energy component of your bill, however, non-energy costs such as ancillary charges billed by ERCOT and your local utility,

---

[19] *Texas Variable Rates*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2m 2021), https://www.midamericanenergyservices.com/ResidentialSmallBusiness/TexasVariableRates.
[20] *Frequently Asked Questions*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/Energy101/TexasGridEmergencyFaq.

are not fixed and are passed through on your bill . . . You will see a new line item on your bill, Supplemental Ancillary Charges, for the increase in ancillary rates."[21]

30. MidAmerican cannot now backtrack and attempt to justify a pass-through on ancillary and other costs when J&M Plastics and the proposed class agreed to a Fixed Price, inclusive of Ancillary and ERCOT-assessed charges, for electricity. Ex. **A**.

31. MidAmerican has acknowledged limitations to the same pass-through costs. It has not and cannot pass-through the same costs to their residential and small business customers, who are protected under the PUC consumer protection regulations. Ex. **A**, Schedule A, at 1.

32. In the aftermath of the winter storm events, government officials, including the Texas Attorney General, began investigations into the power outages, high energy bills, and lack of timely and credible information. Senator Ted Cruz tweeted: "No power company should get a windfall because of a natural disaster, and Texans shouldn't get hammered by ridiculous rate increases for last week's energy debacle."[22] The PUC also "urged retail electric providers to delay invoicing" for customers.[23]

33. MidAmerican Energy, the sister and predecessor entity to MidAmerican, posted on its website that it has worked to spread the winter storm expenses out across many months to "help [their] customers in a time when many people are experiencing ongoing financial difficulties as a result of COVID-19 and other economic challenges."[24] MidAmerican has not acknowledged any wrongdoing and has not taken similar steps to mitigate the impact on its customers in Texas.

---

[21] *Frequently Asked Questions*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/Energy101/TexasGridEmergencyFaq (emphasis in original).
[22] Linda So and Jonathan Allen, *Texas Utilities Can't Stick Customers with Huge Bills after Storm: Abbott*, REUTERS (Feb. 21, 2021, 12:39 p.m.), https://www.reuters.com/article/uk-usa-weather-texas-idUSKBN2AL0J7.
[23] News Release, PUC Emergency Actions to Protect Texas Electricity Customers, Pub. Util. Comm'n of Texas (Feb. 21, 2021), https://www.puc.texas.gov/agency/resources/pubs/news/2021/PUCTX-REL-COLD21-022121-EOM.pdf.
[24] *Controlling February 2021 Gas Costs for our Customers*, MIDAMERICAN ENERGY COMPANY (last visited June 2, 2021), https://www.midamericanenergy.com/payment-assistance/controlling-gas-prices.

34. MidAmerican has treated J&M Plastics and the class members unlawfully and in breach of its contract when it charged customers additional costs and excessive electricity prices during and because of the winter storm.

## CLASS ALLEGATIONS

35. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)-(3), and/or 23(c)(4)-(5), J&M Plastics, on behalf of itself and all others similarly situated, bring this class action, and seek to represent the following Class:

> All persons or entities who purchased or obtained electricity services in Texas from MidAmerican and were charged and/or paid excessive and/or exorbitant electricity prices (e.g., supplemental ancillary services) during and because of Winter Storm Uri of February 2021.

36. Excluded from the Class is MidAmerican, any entities in which MidAmerican has a controlling interest, any of MidAmerican's officers, directors, employees, legal representatives, heirs, successors, and assigns, anyone employed with Plaintiffs' counsels' firm, and any Judge to whom this case is assigned and his or her immediate family.

37. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. While the exact number of Class Members is information not readily available at this time, as only MidAmerican possesses the data to determine the number of customers who experienced excessive electricity prices during and because of the winter storm, Plaintiffs have reasonable belief that there are thousands of potential Class Members. MidAmerican has thousands of customers in Texas and nearly all of Texas was impacted by the Texas power grid and the winter storm.

38. **Typicality.** J&M Plastics' claims are typical of the claims of Class Members they seek to represent because J&M Plastics, and all Class Members were customers of MidAmerican and incurred excessive and/or exorbitant electricity prices (e.g., supplemental ancillary services) during and because of the winter storm.

39. **Adequacy.** Plaintiffs have retained counsel experienced in complex class action and consumer protection litigation. J&M Plastics has no interests that are averse to or in conflict with other Class Members and will fully and adequately protect the interests of all Class Members.

40. **Commonality.** The questions of law and fact common to Class Members predominate over any questions that may affect only individual members, namely whether: MidAmerican breached its Agreement, with a Fixed Price, with customers; MidAmerican engaged in price gouging by charging excessive electricity prices to customers during and because of the winter storm; MidAmerican engaged in false, deceptive, and misleading acts and practices; MidAmerican engaged in unconscionable acts; MidAmerican breached an express warranty; MidAmerican negligently misrepresented its services offered and provided to customers; MidAmerican acted negligently when failing to prevent excessive electricity prices charged to customers during and because of the winter storm; MidAmerican is liable for the additional costs and expenses and price spikes on electricity supplied by the market; MidAmerican committed a violation under Texas's Deceptive Trade Practices Act, negligent misrepresentation, and negligence; J&M Plastics and Class Members were harmed; and MidAmerican should be subjected to a declaratory judgment, injunction, and statutory and other damages.

41. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose a heavy burden on the judicial system and create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort, and expense and would assure uniformity of decision with respect to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

42. Class Members' interest in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class is cohesive, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and generally formulaic, and the expense and burden of individual litigation could preclude them from fair redressal of the wrongs done to them. Plaintiffs anticipate no difficulty in the management of this action as a class action.

### COUNT I: BREACH OF CONTRACT

43. The preceding paragraphs are incorporated by reference as if fully alleged herein.

44. J&M Plastics has a valid, enforceable contract—the Agreement—with MidAmerican. Ex**. A**. J&M Plastics is a signatory to the Agreement and therefore, is a proper party to bring suit for a breach of the contract. J&M Plastics was a reliable MidAmerican customer and performed any contractual obligations.

45. MidAmerican breached its Agreement with J&M Plastics.

46. In April 2021, MidAmerican claimed J&M Plastics owed an additional $53,661.78 in Supplemental Ancillary Services for its February 2021 electricity usage during the winter storm. Ex. **C**. The charges were in addition to the Fixed Price already paid for its February 2021 electricity usage. Ex. **D**. The Agreement sets out a Fixed Price, inclusive of additional Ancillary and ERCOT-assessed charges, and does not permit these additional charges to be passed-through and charged to customers. Ex. **A**.

47. MidAmerican has not offered a legal and adequate explanation for its decision to pass on the winter storm price spikes to customers, such as J&M Plastics and Class Members.

48. MidAmerican's breach of contract caused injury to J&M Plastics. J&M Plastics suffered monetary losses and its injuries were a natural, probable, and foreseeable consequence of MidAmerican's breaches.

49. J&M Plastics made a good faith payment on the April 2021 invoice in the amount of $21,173.23 (equal to approximately the total bill minus the Supplement Ancillary Services), but MidAmerican is still demanding the remainder of the invoice be paid.

50. J&M Plastics and Class Members seek contractual damages and any attorney fees, costs, and interest.

## COUNT II: VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES ACT

51. The preceding paragraphs are incorporated by reference as if fully alleged herein.

52. J&M Plastics is a consumer, as it is a corporation that acquired electricity services by purchase from MidAmerican.

53. MidAmerican acted knowingly and intentionally when violating Texas's Deceptive Trade Practices Act, Chapter 17 of the Texas Business and Commerce Code ("DTPA").

54. The DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Tex. Bus. & Com. Code § 17.46(a).

55. **DTPA §§ 17.46(b)(2), (5), (7), (9), and (12)** prohibit MidAmerican from: causing confusion as to the source of services; representing services have characteristics, uses, benefits or quantities that it does not have; representing services are of a particular standard if they are of another; advertising services with the intent not to sell as advertised; and representing an agreement confers rights, remedies, or obligation that it does not have.

56. MidAmerican deceived customers as to its services when it sold a Fixed Price plan to J&M Plastics but added Supplemental Ancillary Services to its April 2021 invoice. MidAmerican never disclosed the additional costs to customers.

57. MidAmerican represented and led J&M Plastics to believe its Fixed Price plan consisted of an electricity offering that would meet its needs. The plan would be reliable, easy, and simple to understand, meet budgetary constraints, and offer a Fixed Price for electricity. MidAmerican, through its advertising and marketing, misled J&M Plastics and Class Members. MidAmerican passed-through additional Ancillary and ERCOT-assessed charges on top of charging a Fixed Price (clearly intended to be inclusive of such costs). MidAmerican charged customers excessive prices during and because of the winter storm that was not in keeping with its promise to customers.

58. MidAmerican was well-aware electricity prices could radically increase when the Texas power grid faced inclement weather. In such an event, MidAmerican knew it would pass on the expenses to customers with no explanation prior to, during, or soon after the weather event. Rather than relay the truth and be transparent, MidAmerican continued to hide how it calculated and allocated Supplemental Ancillary Services. Ultimately, J&M Plastics and Class Members were unable to ascertain they would be exposed to price spikes, including weather-related increases, and MidAmerican would charge them extra for their electricity usage on their Fixed Price plans.

59. **DTPA § 17.46(b)(24)** prohibits failing to disclose information concerning a service, which was known at the time of the transaction, if intended to induce the consumer into a transaction into which the consumer would not have entered.

60. To acquire customers, MidAmerican advertised and marketed its service plans as Fixed Price plans that would be a reliable, easy, simple to understand, and meet budgetary

constraints. Had they understood MidAmerican's pricing scheme and the possibility of additional Ancillary and ERCOT-assessed charges, J&M Plastics and Class Members would not have agreed to MidAmerican's services guised as Fixed Price plans.

61. **DTPA § 17.46(b)(27)** disallows price gouging during a disaster. It prohibits taking advantage of a disaster, as declared under Chapter 418 of the Texas Government Code, by:

> (A) selling or leasing fuel, food, medicine, lodging, building materials, construction tools, or another necessity at an exorbitant or excessive price; or
> (B) demanding an exorbitant or excessive price in connection with the sale or lease of fuel, food, medicine, lodging, building materials, construction tools, or another necessity;

Tex. Bus. & Com. Code § 17.46(b)(27).

62. MidAmerican price gouged customers when passing on additional Ancillary and ERCOT-assessed charges related to the winter storm to customers. J&M Plastics and Class Members did not anticipate such increases to their Fixed Rate plans. They relied on MidAmerican's electricity supply and their Fixed Price plans to their detriment, particularly amidst a disastrous winter storm.

63. MidAmerican's unlawful conduct and its excessive electricity pricing were a producing cause of damages to J&M Plastics and Class Members.

64. **Unconscionability.** MidAmerican's charging of excessive electricity prices was unconscionable. An unconscionable act "takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). MidAmerican engaged in a predatory tactic by promoting and selling a Fixed Price plan but ultimately passing on additional Ancillary and ERCOT-assessed charges to customers. J&M Plastics and Class Members could not appreciate the extent of MidAmerican's tactic and its impact

on them. MidAmerican took advantage of their lack of knowledge to a grossly unfair degree via its Fixed Price plans. MidAmerican's unconscionable acts were a producing cause of damages.

65. **Express Misrepresentation.** MidAmerican sold Fixed Price plans to J&M Plastics and Class Members. MidAmerican represented its plan would be reliable, easy, and simple to understand, meet budgetary constraints, and offer a Fixed Price for electricity. MidAmerican's representation was the basis of the bargain. MidAmerican breached the warranty with additional Ancillary and ERCOT-assessed charges, and J & M Plastics and the Class Members suffered.

66. J & M Plastics and Class Members seek statutory damages, any attorney fees, costs, and interest.

### COUNT III: NEGLIGENT MISREPRESENTATION

67. The preceding paragraphs are incorporated by reference as if fully alleged herein.

68. MidAmerican made several representations to J&M Plastics and Class Members while obtaining their business and relating to its Fixed Price plans.

69. MidAmerican represented its service plans consisted of electricity prices based on a Fixed Price. The plans would be reliable, easy, and simple to understand, meet budgetary constraints, and eliminate price fluctuations.

70. MidAmerican had a pecuniary interest in making such representations, as it sought to attract customers to a reliable, trustworthy, and dependable service provider and plan.

71. MidAmerican's representations proved to be false. Yet, MidAmerican supplied such information to guide J&M Plastics and Class Members. In the aftermath of the winter storm, MidAmerican charged J&M Plastics $53,661.78 in Supplemental Ancillary Services. Ex. **C**.

72. The charges for Supplemental Ancillary Services exemplify MidAmerican's misrepresentations to J&M Plastics. If MidAmerican had applied its typical Fixed Price, then J&M Plastics would not be made to pay for electricity that grossly exceeded its typical monthly invoice.

73. Additionally, MidAmerican failed to disclose the extent of risk associated with its Fixed Price plans. If its plans could result in outrageous price spikes from month to month, MidAmerican should have disclosed the possibility of such outcomes to J&M Plastics and Class Members. MidAmerican did not exercise sufficient care or competence when communicating to customers. The lack of explanation as to the charges and additional information given to customers was wholly inadequate to ascertain the risks associated with its electricity services.

74. J&M Plastics and Class Members justifiably relied on the representations made by MidAmerican, and MidAmerican's negligent misrepresentations proximately caused them injury. J&M Plastics and Class Members seek actual and exemplary damages, costs, and interest.

## COUNT IV: NEGLIGENCE

75. The preceding paragraphs are incorporated by reference as if fully alleged herein.

76. MidAmerican has a duty to apply a level of care commensurate with the foreseeable harm arising from its control and management of its services. This encompasses a duty to ensure, especially during a disaster, electricity is not sold via MidAmerican at additional costs and excessive prices to J&M Plastics and Class Members.

77. As the winter storm emerged in February 2021, it was foreseeable to MidAmerican and the energy sector that there would be electricity price spikes. MidAmerican has acknowledged and posted on its website that "[a]ncillary costs are market driven and can increase significantly during extreme weather events."

78. MidAmerican had the ability and contractual right to prevent charging customers additional costs and excessive prices during the disaster. MidAmerican controlled its services and platform, oversaw pricing, and should have refrained from overcharging customers.

79. MidAmerican did not exercise ordinary care and comply with existing standards of care when it charged customers additional Ancillary and ERCOT-assessed charges. It failed to properly detect and react to the electricity market volatility and price increases.

80. Given the foreseeability of excessive electricity prices during the winter storm, a reasonable electricity provider in MidAmerican's position would have implemented measures to prevent customers from being overcharged and taken aggressive steps to prevent it. MidAmerican did not do so, and instead, responded in an ineffective manner, by billing extra charges to customers with Fixed Price plans nearly two months after the winter storm.

81. MidAmerican's negligence proximately caused damage to its customers. Had MidAmerican exercised reasonable care, J&M Plastics and Class Members would not have incurred additional, excessive charges for electricity purchased from MidAmerican. J&M Plastics and Class Members are entitled to actual damages, costs, and interest.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF

82. The preceding paragraphs are incorporated by reference as if fully alleged herein.

83. An actual controversy has arisen and now exists between J&M Plastics and Class Members, on the one hand, and MidAmerican, on the other, concerning costs and prices charged for electricity during and because of the winter storm.

84. Plaintiffs contend MidAmerican charged customers additional costs and excessive prices during the winter storm and acted unconscionably. Therefore, J&M Plastics requests the Court declare MidAmerican's conduct unlawful to prevent future controversies that would allow

for continued injustices such as the present one, where an essential service provider took advantage of customers and consumers.

85.  Plaintiffs further seek an injunction enjoining MidAmerican from (1) any engagement in the unlawful conduct of charging customers additional costs and excessive prices during and because of the winter storm; (2) from billing and collecting payments from customers charged with additional costs and excessive prices during and because of the winter storm and ordering MidAmerican to fully forgive any late or non-payments associated with such bills, including removing any negative credit reporting and penalties, and to refund any payments already made on such bills; and (3) from disconnecting electricity services due to non-payment of a bill charging additional costs and excessive prices during and because of the winter storm.

## PRAYER FOR RELIEF

WHEREFORE, J&M Plastics, individually and on behalf of all others similarly situated, request relief and judgment against MidAmerican as follows:

a. Certification of the proposed Class;

b. Appointment of the undersigned as counsel for the proposed Class;

c. For a judgment against MidAmerican for the causes of action alleged against it;

d. For all available damages in an amount to be proven at trial;

e. For a declaration that MidAmerican conduct as alleged herein is unlawful and in breach of its contracts with J&M Plastics and Class Members;

f. Imposition of a constructive trust, an order granting restitution, injunctive relief, and other such equitable relief the Court deems just and proper;

g. For all available actual, statutory, and treble damages;

h. For exemplary and punitive damages;

    i.    For pre-judgment and post-judgment interest at the maximum rate permitted by law;

    j.    For Plaintiffs' reasonable attorneys' fees, costs, and expenses; and

    k.    For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues so triable.

June 7, 2021

 

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**
*/s/ Derek H. Potts*
Derek H. Potts
Texas Bar No. 24073727
T. Micah Dortch
Texas Bar No. 24044981
J. Ryan Fowler
Texas Bar No. 24058357
POTTS LAW FIRM, LLP
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Tel: (713) 963-8881
Email: dpotts@potts-law.com
Email: mdortch@potts-law.com
Email: rfowler@potts-law.com

**ATTORNEYS FOR PLAINTIFFS**