## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **J&M PLASTICS, INC.,** | § | |
| **Individually and on Behalf of** | § | |
| **all Others Similarly Situated,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **CASE NO. 2:21-cv-00206-JRG** |
| **v.** | § | |
| | § | |
| **MIDAMERICAN ENERGY** | § | |
| **SERVICES, LLC,** | § | |
| | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

### PLAINTIFFS' *FIRST AMENDED* ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs J&M Plastics, Inc. ("J&M Plastics"), Individually and on Behalf of all Others Similarly Situated, by and through the undersigned counsel, bring this class action against Defendant MidAmerican Energy Services, LLC ("MidAmerican"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specific to J&M Plastics, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a class action on behalf of MidAmerican customers who were charged excessive electricity prices during and because of Winter Storm Uri of February 2021 (the "winter storm"). MidAmerican provided electricity to customers in Texas. MidAmerican passed on additional ancillary and ERCOT-assessed charges directly to customers with fixed price service plans, resulting in grossly high electricity bills. MidAmerican minimized its own exposure to the Texas power grid's pricing spikes during the winter storm and took advantage of customers at a vulnerable time, as they experienced power outages and other hardships during the winter storm.

2. Nearly two months after the winter storm, J&M Plastics received a statement from MidAmerican that included several new and unusual line-items. The line-items, "Supplemental Ancillary Services" dated the week of the winter storm, totaled $53,661.78. The charges for Supplemental Ancillary Services alone were nearly 3 times more than the amount of J&M Plastics' typical total monthly bill.

3. This class action does not simply address a billing dispute between MidAmerican and its customers, but rather is intended to compensate Plaintiffs for MidAmerican deceiving its customers and inducing them into entering its service plans, which exposed them to extremely high risk without their knowledge.

4. MidAmerican has caused substantial harm to J&M Plastics and the proposed class through its wrongful acts and by charging excessive electricity prices during and because of a natural disaster.

## THE PARTIES

5. Plaintiff J&M Plastics, Inc. is incorporated in Texas with its principal place of business located at 1121 Industrial Drive, Royse City, Collin County, Texas 75189. J&M Plastics, Inc. also includes its agents, representatives, assignees, and employees.

6. MidAmerican Energy Services, LLC is a Delaware limited liability company with its principal place of business located at 666 Grand Avenue, Des Moines, Iowa 50309. It maintains a registered agent, CT Corporation System, who can be served at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. MidAmerican Energy Services, LLC also includes its agents, representatives, assignees, and employees and any predecessor and successor entities.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and each of the proposed classes contains more than 100 members.

8.     This Court has personal jurisdiction over MidAmerican because MidAmerican has substantial contacts with Texas. At all relevant times, MidAmerican purposefully availed itself of the benefits and protections of Texas by continuously and systematically conducting business so substantial as to render it at home there. MidAmerican markets and sells electricity throughout Texas, is registered to provide electricity in Texas, and maintains a registered agent in Texas.

9.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to the alleged claims occurred or originated in this District. J&M Plastics is physically located and received services and related invoices and correspondence in Collin County, Texas.

10.     The Public Utility Commission ("PUC") refused to resolve J&M Plastics' complaint "due to the waiving" of the PUC consumer protection regulations. The PUC has no specialized knowledge to contribute to and holds no jurisdiction over this matter. The PUC cannot provide an adequate remedy to Plaintiffs, who are faced with the continuous threat of termination of electricity and additional damages, and therefore, J&M Plastics turns to the Court to resolve this matter.

## FACTUAL BACKGROUND

11.     J&M Plastics utilizes recycled plastics to manufacture plastic trays for the nursery industry and paving chairs used in construction.[1] It relies on electricity to power its equipment and plant and received its electricity from MidAmerican. J&M Plastics has been a MidAmerican customer since first entering into a Retail Electric Supplier Agreement with MidAmerican Energy Company in December 2011.[2] MidAmerican added Schedules A and B to the Agreement on November 16, 2016 ("Agreement" in its entirety).

12.     MidAmerican is a part of Berkshire Hathaway Energy. It supplies electricity in deregulated markets throughout the United States.[3] It has 60,000 customers of which about 15,000 are commercial, residential, and industrial customers located in Texas.[4]

13.     Pursuant to the Agreement, MidAmerican was to provide J&M Plastics with electricity at the "Fixed Price" of $0.0395 per kWh. Ex. **A**, Agreement.

14.     The Agreement specifies that not only will the Fixed Price "be applied to all usage within the respective Pricing Period" but also:

> **The Fixed Price** and/or the variable Price Adder **includes costs associated with** line loss based on applicable transmission and delivery tariff loss factors, renewable compliance costs, **all charges assessed by ERCOT**, in addition to congestion (including local, inter-zonal and HUB-to-zone congestion charges) **and Ancillary charges** . . . . The term "Ancillary" means wholesale electric services, capacity, Regulation Up Service Charges, Regulation Down Service Charges, Responsive Reserve Service Charges, Non-Spinning Reserve Service Charges, Reliability Unit Commitment Charges and other costs required to facilitate delivery of electricity to Customer's Delivery Points.

---

[1] J&M PLASTICS, INC., http://www.jandmplastics.com/ (last visited June 2, 2020).
[2] J&M Plastics originally contracted with MidAmerican Energy Company. It appears  MidAmerican Energy Services, LLC was created in 2015 to service the deregulated energy markets.
[3] *Market Areas*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/AboutMidAmerican/MarketAreas
[4] *A Berkshire Hathaway Energy Company*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/AboutMidAmerican/WhoAreWe;
https://www.eia.gov/electricity/sales_revenue_price/pdf/table6.pdf;
https://www.eia.gov/electricity/sales_revenue_price/pdf/table7.pdf;
https://www.eia.gov/electricity/sales_revenue_price/pdf/table8.pdf

Ex**. A**, Schedule B, at 1 (emphasis added). Therefore, the Fixed Price charged to J&M Plastics was to include costs associated with ERCOT and any "Ancillary" charges. *Id*.

15.     John Stettler, then President of J&M Plastics, originally chose MidAmerican as its electricity provider because it promoted and advertised its Agreement with a Fixed Price as a nice, simple, and straightforward approach to offering electricity. MidAmerican "flowed with assurances." J&M Plastics purposefully switched over to MidAmerican to avoid a variable rate plan after experiencing the price fluctuations that occurred during the winter freeze of 2011.[5]

16.     MidAmerican pitched that its price quote included all components of its services except for the PUC Assessment fee, taxes, and transmission and distribution ("TDSP") charges.

17.     Two MidAmerican sales representatives visited and toured J&M Plastics' facilities, advising J&M Plastics on its individualized needs and operations. Mr. Stettler closely scrutinized MidAmerican's service offerings and business model, particularly for its ability to supply electricity and meet a set price point.

18.     At the time, Eric Szalo, MidAmerican's Account Manager, was J&M Plastics' point of contact with MidAmerican.

19.     Thereafter, Mr. Stettler met with MidAmerican's sales representatives several times, even attending an electricity usage presentation (and a Dallas Mavericks basketball game).

20.     In February 2021, years after the Agreement was entered, Winter Storm Uri wreaked havoc in Texas. More than 4.5 million electricity customers in Texas were left without power.[6] The winter storm began on February 11, 2021, and ended on February 19, 2021. The

---

[5] Erin Douglas, et al., *Texas Leaders Failed to Heed Warnings that Left the State's Power Grid Vulnerable to Winter Extremes, Experts Say*, TEXAS TRIBUNE (Feb. 19, 2021), https://www.texastribune.org/2021/02/17/texas-power-grid-failures/.

[6] Jeffrey Ball, *The Texas Blackout is the Story of a Disaster Foretold*, TEXAS MONTHLY (Feb. 19, 2021), https://www.texasmonthly.com/news-politics/texas-blackout-preventable/.

winter storm brought cold weather, including sub-freezing temperatures, snow, and ice, to a region ill-equipped to handle such conditions.

21.     On February 12, 2021, Governor Greg Abbott declared a state of disaster in all Texas counties due to the winter weather. Ex. **B**, Proclamation. President Joseph R. Biden, Jr. later approved an emergency declaration for the same.[7] Texas had an additional disaster declaration in place at the time for the novel coronavirus.[8]

22.     On February 14, 2021, the entire state of Texas was placed under a winter storm warning.[9] Weather forecasters predicted the inclement weather as early as February 5, 2021, giving power grid operators, energy companies, and state officials ample time to prepare.[10]

23.     With the increased electricity demand due to the winter storm, two major decisions were implemented to prevent the power grid from a collapse.

24.     On February 14, 2021, the Electric Reliability Council of Texas ("ERCOT") announced rolling outages would be imposed to avoid a complete system breakdown.[11] ERCOT manages the power grid and flow to 90% of Texas. The outages were expected to last 45 minutes per area, but instead, some Texans went days without power.[12] As a result, many Texans felt blind-sided and alone as they dealt with the crisis.

---

7 *President Joseph R. Biden, Jr. Approves Texas Disaster Declaration* (Feb. 20, 2021),
https://www.whitehouse.gov/briefing-room/statements-releases/2021/02/20/president-joseph-r-biden-jr-approves-texas-disaster-declaration/.
[8]*Governor Abbott Extends COVID-19 Disaster Declaration – February 2021* (Feb. 4, 2021, 10:05 a.m.),
https://gov.texas.gov/news/post/governor-abbott-extends-covid-19-disaster-declaration-february-2021
[9] Mireya Villarreal, *All 254 Texas Counties under Winter Storm Warning as Arctic Blast Heads East*, CBS NEWS
(Feb. 14, 2021, 6:49 p.m.), https://www.cbsnews.com/news/texas-snow-winter-storm-warning-arctic-blast-2021-02-14/.
[10] Andrew Freedman, *Meteorologists for Texas Grid Operator Warned of the Winter Storm's Severity*,
WASHINGTON POST(Feb. 19, 2021, 3:51 p.m.), https://www.washingtonpost.com/weather/2021/02/19/texas-cold-early-warning/.
[11] Megan Menchaca, *Texas' Grid Operator Warns Rolling Blackouts are Possible as Winter Storm Escalates Demand for Electricity*, TEXAS TRIBUNE(Feb. 14, 2021, 9:00 p.m.), https://www.texastribune.org/2021/02/14/texas-rolling-blackouts/.
[12] Cassandra Pollock, *When will Texans Get their Power Back? Officials Don't Know,* TEXAS TRIBUNE (Feb. 16, 2021, 5:00 p.m.), https://www.texastribune.org/2021/02/16/texas-ercot-power-outage/.

25.     Rolling blackouts were last carried out in Texas a decade ago.[13] The Texas energy industry failed to address the winter weatherization issues that occurred in 2011.[14]

26.     On February 16, 2021, the PUC directed ERCOT to apply the high system-wide offer cap that raised electricity prices to $9,000 per MWh.[15] The use of the rate cap was meant to incentivize generators to supply power to the grid. Experts have calculated ERCOT received at least a $16 billion windfall after keeping the rate cap in place for an extra 32 hours.[16] The PUC has refused to reprice electricity.[17]

27.     Overall, during the winter storm, nearly $50 billion in electricity sales were carried out, which is equal to the previous three years' combined sales.[18]

28.     In the first week of March 2021, Richard Soliz, MidAmerican's Account Executive, contacted Mr. Stettler by email to pursue reenrollment. Mr. Stettler asked Mr. Soliz about what pricing to expect for J&M Plastics' February 2021 usage, but Mr. Soliz deflected. Mr. Soliz did reassure him that the invoice charges for energy include ancillary costs.

29.     On April 7, 2021, nearly two months after the winter storm, J&M Plastics received an atypical invoice from MidAmerican. The invoice contained the usual charges for Generation Supply (set at the Fixed Price), Gross Receipts Reimbursed, and PUC Assessment.

---

[13] Brian K. Sullivan and Naureen S. Malik, *5 Million Americans have Lost Power from Texas to North Dakota after Devastating Winter Storm*, TIME (Feb. 15, 2021, 10:55 a.m.), https://time.com/5939633/texas-power-outage-blackouts/#:~:text=5%20Million%20Americans%20Have%20Lost,on%20Feb.%2015%2C%202021.
[14] Erin Douglas, et al., *Texas Leaders Failed to Heed Warnings that Left the State's Power Grid Vulnerable to Winter Extremes, Experts Say,* TIME (Feb. 19, 2021), https://www.texastribune.org/2021/02/17/texas-power-grid-failures/.
[15] E-mail from ERCOT to Market Participants (Feb. 16, 2021, 6:04 PM), http://www.ercot.com/services/comm/mkt_notices/archives/5221; *see also* 16 Tex. Admin. Code § 25.505 (setting the caps for the wholesale market).
[16] Mitchell Ferman, *Texas Will Not Fix ERCOT's $16 Billion Power Billing Mistake*, TEXAS TRIBUNE (March 5, 2021, 12:00 p.m.), https://www.texastribune.org/2021/03/05/texas-ercot-electric-bills/.
[17] *Id.*
[18] Will Englund and Neena Satija, *As Texans Went Without Heat, Light or Water, Some Companies Scored a Big Payday*, WASHINGTON POST (Feb. 27, 2021, 7:00 a.m.), https://www.washingtonpost.com/business/2021/02/27/texas-power-winners-losers/.

However, the invoice also included eight additional charges all labelled as Supplemental Ancillary Services. The invoice from April 2021 shows the following:

| Description | Quantity | Unit of Measure | | Unit Price | Total Price |
|---|---|---|---|---|---|
| Generation Supply | 360,487 | kWh | x | 0.039500 | 14239.24 |
| 02/14/2021 Supplemental Ancillary Services | 1,846.13 | kWh | x | 0.644780 | 1190.35 |
| 02/15/2021 Supplemental Ancillary Services | 5,813.33 | kWh | x | 1.058630 | 6154.17 |
| 02/16/2021 Supplemental Ancillary Services | 6,667.43 | kWh | x | 1.553580 | 10358.39 |
| 02/17/2021 Supplemental Ancillary Services | 3,975.53 | kWh | x | 2.294730 | 9122.77 |
| 02/18/2021 Supplemental Ancillary Services | 4,860.00 | kWh | x | 2.693650 | 13091.14 |
| 02/19/2021 Supplemental Ancillary Services | 4,169.03 | kWh | x | 1.892870 | 7891.43 |
| 02/20/2021 Supplemental Ancillary Services | 6,132.60 | kWh | x | 0.819480 | 5025.54 |
| 02/21/2021 Supplemental Ancillary Services | 8,889.75 | kWh | x | 0.093140 | 827.99 |
| Gross Receipts Reimb | | | | | 726.54 |
| PUC Assessment | | | | | 113.19 |
| | | | | **Subtotal Energy Supply Charges** | **$68,740.75** |

Ex. **C**, April 2021 Invoice. J&M Plastics was charged a total of $74,834.91 with $53,661.78 in Supplemental Ancillary Services. *Id*. MidAmerican neither defined Supplemental Ancillary Services in the Agreement nor provided any adequate explanation of the additional charges.

30.     On the mornings of April 15 and 16, 2021, J&M Plastics called MidAmerican and spoke to three employees (Amanda, Richard, and Jacenia) seeking an explanation for the extra charges. MidAmerican could not identify where the Agreement permitted Supplementary Ancillary Services charges or provide any clarity as to the charges.

31.     The April 2021 invoice far exceeded J&M Plastics' average monthly invoice. For example, in March 2021, J&M Plastics paid $15,889.50 with no Supplemental Ancillary Services.  The invoice from March 2021 shows the following:

| Description | Quantity | Measure | | Unit Price | Total Price |
|---|---|---|---|---|---|
| Generation Supply | 250,785 | kWh | x | 0.039500 | 9906.01 |
| Gross Receipts Reimb | | | | | 105.99 |
| PUC Assessment | | | | | 16.51 |
| | | | | **Subtotal Energy Supply Charges** | **$10,028.51** |

Ex. **D**, March 2021 Invoice. The March invoice appeared as a typical bill with one Generation Supply charge that applied a Fixed Price of $0.0395 per kWh.

32.     During the winter storm, J&M Plastics conserved electricity usage, only having the minimal amount of machinery running idle to keep the plant and equipment from freezing.

During this precarious time, J&M Plastics did not manufacture products but did have two employees on 24-hour duty to be sure the plant and equipment continued to function.

33.     J&M Plastics' electricity usage was so low that pipes froze outside its plant.

34.     MidAmerican waited until April 2021 to pass on the winter storm expenses to J&M Plastics as Supplemental Ancillary Services in its invoice. Ex. **C**. From February 14 to 21, 2021, J&M Plastics was charged an additional $0.093 to $2.69 per kWh for electricity. *Id.*

35.     MidAmerican was aware of the possibility of price fluctuations and spikes, given the historical impact of inclement weather on electricity. In Summer 2019 and Winters 1989, 2011, and 2014, electricity prices soared because of weather. Indeed, MidAmerican provided customers with the option of selecting service plans with a Fixed Price to avoid ERCOT price volatility.[19] MidAmerican even acknowledges on their website that "[a]ncillary costs are market-driven and can increase significantly during extreme weather events."[20]

36.     On April 28, 2021, J&M Plastics made a good faith payment and requested that the Supplemental Ancillary Services charges be removed or corrected on the April 2021 invoice.

37.     MidAmerican replied with a boilerplate denial letter stating that the "supplemental ancillary charges reflect additional ancillary costs assessed by . . . ERCOT[] for reliability functions performed during the February winter storm event." MidAmerican cited a provision in the Agreement to allegedly justify the additional charges:

> Any future changes in the business practice or business protocols of the Delivery Company, RTO, or ISO; *Ancillary charges* or applicable Delivery charges or transmission tariffs *that affect the items included in the applicable Fixed Price* and/or Variable Price, as defined in this Schedule B, may be incorporated herein as a separate adjustment as of the effective date on which the change occurs or thereafter.

---

[19] *Texas Variable Rates*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2m 2021), https://www.midamericanenergyservices.com/ResidentialSmallBusiness/TexasVariableRates.
[20] *Frequently Asked Questions*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/Energy101/TexasGridEmergencyFaq.

Ex. **A**, Schedule B, at 2 (emphasis added).

38.     J&M Plastics also filed a complaint with the PUC requesting assistance, particularly with MidAmerican's threat to terminate electricity. Ex. **E**, PUC Complaint.[21] The PUC refused to assist. Ex. **F**, PUC Complaint Response Letter. MidAmerican claimed that the PUC consumer protection regulations had been waived by J&M Plastics and other customers, and the PUC confirmed the waiver. *Id*.

39.     Other customers paid the entire invoice, including the charges for Supplemental Ancillary Services, due to the threat of electricity termination and other consequences.

40.     In a further attempt to justify the additional charges, MidAmerican posted its answers to frequently asked questions about the Texas-ERCOT grid emergency on its website. MidAmerican specifically ignored the terms of the Agreement and Fixed Price and informed customers that "MidAmerican Energy Services **will not** increase the energy component of your bill, however, non-energy costs such as ancillary charges billed by ERCOT and your local utility, are not fixed and are passed through on your bill . . . You will see a new line item on your bill, Supplemental Ancillary Charges, for the increase in ancillary rates."[22]

41.     MidAmerican cannot now backtrack and attempt to justify a pass-through of ancillary and other costs when J&M Plastics and the proposed class agreed to a Fixed Price, inclusive of Ancillary and ERCOT-assessed charges, for electricity. Ex. **A**.

---

[21] MidAmerican threatened termination of electricity during the PUC's disconnection moratorium, which only effectively ended on June 18, 2021. *See PUC Lifts Moratorium on Utility Disconnections for Non-Payment* (June 11, 2021), https://www.puc.texas.gov/agency/resources/pubs/news/2021/PUCTX-REL-DNPsResume.pdf.
[22] *Frequently Asked Questions*, MIDAMERICAN ENERGY SERVICES, LLC (last visited June 2, 2021), https://www.midamericanenergyservices.com/Energy101/TexasGridEmergencyFaq (emphasis in original).

42.     MidAmerican has acknowledged limitations to the same pass-through costs. It has not and cannot pass-through the same costs to their residential and small business customers, who are protected per the PUC consumer protection regulations. Ex. **A**, Schedule A, at 1; Ex. **E**.

43.     In the aftermath of the winter storm events, government officials, including the Texas Attorney General, began investigations into the power outages, high energy bills, and lack of timely and credible information. Senator Ted Cruz tweeted: "No power company should get a windfall because of a natural disaster, and Texans shouldn't get hammered by ridiculous rate increases for last week's energy debacle."[23] The PUC also "urged retail electric providers to delay invoicing" for customers.[24]

44.     MidAmerican Energy, the sister and predecessor entity to MidAmerican, posted on its website that it has worked to spread the winter storm expenses out across many months to "help [their] customers in a time when many people are experiencing ongoing financial difficulties as a result of COVID-19 and other economic challenges."[25] MidAmerican has not acknowledged any wrongdoing and has not taken similar steps to mitigate the impact on its customers in Texas.

45.     MidAmerican has treated J&M Plastics and the class members unlawfully and in breach of its contract when it charged customers additional costs and excessive electricity pricing during and because of the winter storm.

46.     J&M Plastics has been unable to continue its typical business operations due to the extra charges. It must now especially consider profitability, equipment purchases, employee

---

[23] Linda So and Jonathan Allen, *Texas Utilities Can't Stick Customers with Huge Bills after Storm: Abbott*, REUTERS (Feb. 21, 2021, 12:39 p.m.), https://www.reuters.com/article/uk-usa-weather-texas-idUSKBN2AL0J7.
[24] News Release, PUC Emergency Actions to Protect Texas Electricity Customers, Pub. Util. Comm'n of Texas (Feb. 21, 2021), https://www.puc.texas.gov/agency/resources/pubs/news/2021/PUCTX-REL-COLD21-022121-EOM.pdf.
[25] *Controlling February 2021 Gas Costs for our Customers*, MIDAMERICAN ENERGY COMPANY (last visited June 2, 2021), https://www.midamericanenergy.com/payment-assistance/controlling-gas-prices.

raises, and the looming threat of electricity termination—which would force its doors to close. Also, for the first time, J&M Plastics is considering taking out a line of credit with a bank to continue its operations.

47.     Plaintiffs seek recovery of the Supplemental Ancillary Services, as well as any additional penalties. Plaintiffs further seek to recover damages, such as those related to: expenses to maintain low electricity usage, loss of profit, loss of time, loss of credit, loss of business reputation, loss of goodwill, consequences of unpaid claims or debts, threat of electricity termination, property damage, costs of hiring counsel and pursuing litigation to resolve this matter, and other injuries that were incurred.

## CLASS ALLEGATIONS

48.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)-(3), and/or 23(c)(4)-(5), J&M Plastics, on behalf of itself and all others similarly situated, bring this class action, and seek to represent the following Class:

> All persons or entities who purchased or obtained electricity services in Texas from MidAmerican and were charged and/or paid excessive and/or exorbitant electricity prices (e.g., supplemental ancillary services) during and because of Winter Storm Uri of February 2021.

49.     Excluded from the Class is MidAmerican, any entities in which MidAmerican has a controlling interest, any of MidAmerican's officers, directors, employees, legal representatives, heirs, successors, and assigns, anyone employed with Plaintiffs' counsels' firm, and any Judge to whom this case is assigned and his or her immediate family.

50.     **Numerosity.** The Class is so numerous that joinder of all members is impracticable. While the exact number of Class Members is information not readily available at this time, as only MidAmerican possesses the data to determine the number of customers who experienced excessive electricity prices during and because of the winter storm, Plaintiffs have

reasonable belief that there are thousands of potential Class Members. MidAmerican has thousands of customers in Texas, and nearly all of Texas was impacted by the Texas power grid and the winter storm.

51.    **Typicality.** J&M Plastics' claims are typical of the claims of Class Members they seek to represent because J&M Plastics, and all Class Members were customers of MidAmerican and incurred excessive and/or exorbitant electricity prices (e.g., supplemental ancillary services) during and because of the winter storm.

52.    **Adequacy.** Plaintiffs have retained counsel experienced in complex class action and consumer protection litigation. J&M Plastics has no interests that are averse to or in conflict with other Class Members and will fully protect the interests of all Class Members.

53.    **Commonality.** The questions of law and fact common to Class Members predominate over any questions that may affect only individual members, namely whether: MidAmerican breached its Agreement, with a Fixed Price, with customers; MidAmerican engaged in price gouging by charging excessive electricity prices to customers during and because of the winter storm; MidAmerican engaged in  false, deceptive, and misleading acts and practices; MidAmerican engaged in unconscionable acts; MidAmerican breached an express warranty; MidAmerican negligently and fraudulently misrepresented its services offered and provided to customers; MidAmerican acted negligently when failing to prevent excessive electricity prices charged to customers during and because of the winter storm; MidAmerican is liable for the additional costs and expenses and price spikes on electricity supplied by the market; MidAmerican fraudulently induced it customers to agree to its service plans; MidAmerican committed a violation under Texas's Deceptive Trade Practices Act, negligent misrepresentation, fraud, negligence, and fraudulent inducement; J&M Plastics and Class

Members were harmed; and MidAmerican should be subjected to a declaratory judgment, injunction, and statutory and other damages.

54.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose a heavy burden on the judicial system and create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort, and expense and would assure uniformity of decision with respect to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results.

55.     Class Members' interest in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class is cohesive, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and generally formulaic, and the expense and burden of individual litigation could preclude them from fair redressal of the wrongs done to them. Plaintiffs anticipate no difficulty in the management of this action as a class action.

### COUNT I: BREACH OF CONTRACT

56.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

57.     J&M Plastics has a valid, enforceable contract—the Agreement—with MidAmerican. Ex**. A**. J&M Plastics is a signatory to the Agreement and, therefore, is a proper party to bring suit for a breach of the contract. J&M Plastics was a reliable MidAmerican customer and performed any contractual obligations.

58.     MidAmerican breached its Agreement with J&M Plastics.

59.     In April 2021, MidAmerican claimed J&M Plastics owed $53,661.78 in Supplemental Ancillary Services for its February 2021 electricity usage during the winter storm. Ex. **C**. The charges were in addition to the Fixed Price already paid for its February 2021 electricity usage. Ex. **D**. The Agreement sets out a Fixed Price, inclusive of additional Ancillary and ERCOT-assessed charges, and does not permit these additional charges to be passed-through and charged to customers. Ex. **A**.

60.     MidAmerican has not offered a legal and adequate explanation for its decision to pass on the winter storm price spikes to customers, such as J&M Plastics and Class Members.

61.     MidAmerican's breach of contract caused injury to J&M Plastics and Class Members. J&M Plastics and Class Members suffered losses, and their injuries were a natural, probable, and foreseeable consequence of MidAmerican's breaches.

62.     J&M Plastics made a good faith payment on the April 2021 invoice in the amount of $21,173.23 (equal to approximately the total bill minus the Supplemental Ancillary Services), but MidAmerican is still demanding the remainder of the invoice be paid.

63.     Many Class Members paid the entirety of the disputed invoice.

64.     J&M Plastics and Class Members seek contractual damages and any attorney fees, costs, and interest.

**COUNT II: VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES ACT**

65.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

66.     MidAmerican violated Texas's Deceptive Trade Practices Act, Chapter 17 of the Texas Business and Commerce Code ("DTPA").

67.     J&M Plastics is a consumer, as it is a corporation that acquired electricity services by purchase from MidAmerican.

68.    The DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Tex. Bus. & Com. Code § 17.46(a).

69.    **DTPA §§ 17.46(b)(2), (5), (7), (9), and (12)** prohibit MidAmerican from: causing confusion as to the source of services; representing services have characteristics, uses, benefits or quantities that they do not have; representing services are of a particular standard if they are of another; advertising services with the intent not to sell as advertised; and representing an agreement confers rights, remedies, or obligation that it does not have.

70.    MidAmerican deceived customers as to its services when it sold a Fixed Price plan to J&M Plastics but then added Supplemental Ancillary Services to its April 2021 invoice. MidAmerican never disclosed the additional costs to customers.

71.    Prior to reaching an agreement on the terms of a service plan, MidAmerican represented and led J&M Plastics to believe its Fixed Price plan consisted of an electricity offering that would meet its needs. The plan would be reliable, easy, and simple to understand, meet budgetary constraints, and offer a Fixed Price for electricity. MidAmerican, through its advertising, marketing, and sales pitch, misled J&M Plastics and Class Members. MidAmerican passed-through additional Ancillary and ERCOT-assessed charges on top of charging a Fixed Price (clearly intended to be inclusive of such costs). MidAmerican charged excessive pricing during and because of the winter storm that was not in keeping with its promise to customers.

72.    MidAmerican was well-aware electricity prices and costs could radically increase when the Texas power grid faced inclement weather. In such an event, MidAmerican planned to pass on the costs to customers with no explanation prior to, during, or soon after the weather event. Rather than relay the truth and be transparent, MidAmerican continued to hide how it calculated and allocated Supplemental Ancillary Services. Ultimately, J&M Plastics and Class

Members were unable to ascertain that they would be exposed to pricing spikes, including weather-related increases, or that MidAmerican would charge them extra for electricity usage on a Fixed Price plan.

73.     **DTPA § 17.46(b)(24)** prohibits failing to disclose information concerning a service, which was known at the time of the transaction, if intended to induce the consumer into a transaction into which the consumer would not have entered.

74.     To acquire customers, MidAmerican advertised and marketed its service plan as a Fixed Price plan that would be a reliable, easy, simple to understand, and meet budgetary constraints. Had they understood MidAmerican's pricing scheme and the possibility of additional Ancillary and ERCOT-assessed charges, J&M Plastics and Class Members would not have agreed to MidAmerican's services guised as Fixed Price plans.

75.     J&M Plastics specifically sought to minimize price fluctuations, such as those it experienced during the winter freeze of 2011. Yet, MidAmerican's service plan continued to expose J&M Plastics to the risk it sought to avoid.

76.     **DTPA § 17.46(b)(27)** disallows price gouging during a disaster. It prohibits taking advantage of a disaster, as declared under Chapter 418 of the Texas Government Code, by:

> (A)  selling or leasing fuel, food, medicine, lodging, building materials, construction tools, or another necessity at an exorbitant or excessive price; or
> (B)  demanding an exorbitant or excessive price in connection with the sale or lease of fuel, food, medicine, lodging, building materials, construction tools, or another necessity;

Tex. Bus. & Com. Code § 17.46(b)(27).

77.     MidAmerican price gouged customers when passing on additional Ancillary and ERCOT-assessed charges related to the winter storm to customers. J&M Plastics and Class Members did not anticipate such increases to their Fixed Rate plans. They relied on

MidAmerican's electricity supply and their Fixed Price plans to their detriment, particularly amidst a disastrous winter storm.

78.     MidAmerican's unlawful conduct and its excessive electricity pricing were a producing cause of damages to J&M Plastics and Class Members.

79.     **Unconscionability.** MidAmerican's charging of excessive electricity prices was unconscionable. An unconscionable act "takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). MidAmerican engaged in a predatory tactic by promoting and selling a Fixed Price plan but ultimately passing on additional Ancillary and ERCOT-assessed charges to customers. J&M Plastics and Class Members could not appreciate the extent of MidAmerican's tactic and its impact on them. MidAmerican took advantage of their lack of knowledge to a grossly unfair degree via its service plans. MidAmerican's unconscionable acts were a producing cause of damages to J&M Plastics and Class Members.

80.     **Express Misrepresentation.** MidAmerican sold Fixed Price plans to J&M Plastics and Class Members. MidAmerican represented its plan would be reliable, easy, and simple to understand, meet budgetary constraints, and offer a Fixed Price for electricity. MidAmerican's representation was the basis of the bargain. MidAmerican breached the warranty with additional Ancillary and ERCOT-assessed charges, and J&M Plastics and the Class Members suffered.

81.     MidAmerican acted knowingly and intentionally when violating the DTPA. Tex. Bus. & Com. Code § 17.50(b). MidAmerican had actual awareness that its actions were false, deceptive, and unfair and that its actions amounted to a breach of express warranty.

MidAmerican also specifically intended that J&M Plastics and Class Members act in detrimental reliance. Tex. Bus. & Com. Code § 17.45(9), (13).

82.     MidAmerican intended to offer its customers a stable and safe electricity offering as a Fixed Rate plan, which would be inclusive of Ancillary and ERCOT-assessed charges. Nevertheless, in the aftermath of the winter storm, MidAmerican passed on additional Ancillary and ERCOT-assessed charges, shielding itself from exposure and forcing its customers to pay or risk electricity termination and other penalties.

83.     J&M Plastics and Class Members seek statutory damages, including additional damages, attorney fees, costs, and interest.

### COUNT III: NEGLIGENT MISREPRESENTATION

84.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

85.     MidAmerican made several representations to J&M Plastics and Class Members while obtaining, and then retaining, their business and related to its Fixed Price plans.

86.     MidAmerican represented its service plans consisted of electricity prices based on a Fixed Price, inclusive of Ancillary and ERCOT-assessed charges. The plans would be reliable, easy, and simple to understand, meet budgetary constraints, and eliminate price fluctuations.

87.     MidAmerican had a pecuniary interest in making such representations, as it sought to attract customers to a reliable, trustworthy, and dependable service provider and plan. MidAmerican continued to do the same in its attempt to retain customers, such as J&M Plastics.

88.      MidAmerican's representations proved to be false. Yet, MidAmerican supplied such information to guide J&M Plastics and Class Members. In the winter storm's aftermath, MidAmerican charged J&M Plastics $53,661.78 in Supplemental Ancillary Services. Ex. **C**.

89.     The charges for Supplemental Ancillary Services exemplify MidAmerican's misrepresentations to J&M Plastics. If MidAmerican had applied a Fixed Price, then J&M Plastics would not be made to pay an amount for electricity that grossly exceeded its typical monthly invoice.

90.     Additionally, MidAmerican failed to disclose the extent of risk associated with its Fixed Price plans. If its plans could result in outrageous pricing spikes from month to month, MidAmerican should have disclosed the possibility of such outcomes to J&M Plastics and Class Members. MidAmerican did not exercise sufficient care or competence when communicating to customers. The lack of explanation as to the charges and additional information given to customers was wholly inadequate to ascertain the risks associated with its electricity services.

91.     J&M Plastics and Class Members justifiably relied on the representations made by MidAmerican, and MidAmerican's negligent misrepresentations proximately caused them injury. J&M Plastics and Class Members seek actual damages, costs, and interest.

### COUNT IV: FRAUD

92.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

93.     MidAmerican made several representations to J&M Plastics that were material and proved to be false.

94.     At the time of signing up for its service plans and from then on, MidAmerican misrepresented that its service plans consisted of electricity prices based on a Fixed Price, inclusive of Ancillary and ERCOT-assessed charges, and would be reliable, easy, and simple to understand, meet budgetary constraints, and eliminate price fluctuations.

95.     Similar misrepresentations were also made after the winter storm when J&M Plastics questioned MidAmerican about their electricity pricing and April 2021 invoices.

96.     MidAmerican also misrepresented the extent of risk associated with its service plans. If its plans could result in outrageous pricing spikes from month to month, MidAmerican should have disclosed the possibility of such an outcome to J&M Plastics and Class Members. MidAmerican did not exercise sufficient care or competence when communicating to customers.

97.     J&M Plastics and Class Members could not appreciate the risk associated with MidAmerican's electricity services and understand the Supplemental Ancillary Services pricing because MidAmerican failed to explain the service plan and Supplemental Ancillary Services, including what the charges consisted of and how the charges were calculated. MidAmerican did not provide information on the extra charges prior to, during, or shortly after the winter storm.

98.     MidAmerican knew the representations were false and intended that J&M Plastics and Class Members act on the misrepresentations. MidAmerican knew its service plans were meant to be Fixed Price plans, inclusive of Ancillary and ERCOT-assessed charges. By offering a plan with higher risk, MidAmerican would not have attracted and retained J&M Plastics and Class Members, who sought a reliable, trustworthy, and dependable service provider and plan. Indeed, MidAmerican intended that its service plans avoid the known risks of inclement weather on electricity pricing. Furthermore, MidAmerican was aware that its misrepresentations would force J&M Plastics and Class Members to pay wrongful charges or risk electricity termination and other penalties, jeopardizing the viability of their businesses.

99.     J&M Plastics and Class Members relied on the misrepresentations made by MidAmerican, causing them injuries. They enrolled with MidAmerican to avoid pricing spikes due to inclement weather and to take advantage of a low-risk service plan. They trusted MidAmerican with providing them with an essential utility and budgeted accordingly. J&M Plastics and Class Members seek actual and exemplary damages, costs, and interest.

## COUNT V: NEGLIGENCE

100.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

101.    MidAmerican has a duty to apply a level of care commensurate with the foreseeable harm arising from its control and management of its services. This encompasses a duty to ensure, especially during a disaster, electricity is not sold via MidAmerican at additional costs and excessive prices to J&M Plastics and Class Members.

102.    As the winter storm emerged in February 2021, it was foreseeable to MidAmerican and the energy sector that there would be electricity pricing spikes. MidAmerican acknowledged and posted on its website that "[a]ncillary costs are market driven and can increase significantly during extreme weather events."

103.    MidAmerican had the ability and contractual right to prevent charging customers additional costs and excessive prices during the disaster. MidAmerican controlled its services and platform, oversaw pricing, and should have refrained from overcharging customers.

104.    MidAmerican did not exercise ordinary care and comply with existing standards of care when it charged customers additional Ancillary and ERCOT-assessed charges. It failed to properly detect and react to the electricity market volatility and pricing increases.

105.    Given the foreseeability of excessive electricity pricing during the winter storm, a reasonable electricity provider in MidAmerican's position would have implemented measures to prevent customers from being overcharged and taken aggressive steps to prevent it. MidAmerican did not do so, and instead, responded in an ineffective manner by billing extra charges to customers with Fixed Price plans nearly two months after the winter storm.

106.    MidAmerican's negligence proximately caused damage to its customers. Had MidAmerican exercised reasonable care, J&M Plastics and Class Members would not have

incurred additional, excessive charges for electricity purchased from MidAmerican. J&M Plastics and Class Members are entitled to actual damages, including but not limited to loss of credit, loss of goodwill, and damages associated with broken water pipes, costs, and interest.

### COUNT VI: FRAUDULENT INDUCEMENT

107.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

108.     Plaintiffs contend that the charges for Supplemental Ancillary Services are improper and excessive under the terms of the Agreement. If the Court were to find that such charges were proper under the terms of the Agreement, then J&M Plastics asserts this alternative claim for fraudulent inducement.

109.     J&M Plastics and Class Members relied on MidAmerican's false promise, and MidAmerican induced them into an Agreement or service plan that they would not have entered if MidAmerican had not made the false promise.

110.     When offering its service plan, MidAmerican made a material misrepresentation by falsely promising to provide a Fixed Price plan and electricity services based on such plan to J&M Plastics and Class Members.

111.     However, MidAmerican did not intend on keeping its promise. At the time, MidAmerican knew that the representation was false. MidAmerican was well-aware electricity prices and costs could radically increase when the Texas power grid faced inclement weather. In such an event, MidAmerican would pass on the additional Ancillary and ERCOT-assessed charges directly to customers.

112.     MidAmerican completely disregarded its promise that its price quote included all components of its services except for the PUC Assessment fee, taxes, and TDSP charges.

113.    MidAmerican intended that J&M Plastics and Class Members rely on the misrepresentation so that it would gain customers. Indeed, J&M Plastics and Class Members relied on the misrepresentation, causing them injury. J&M Plastics seeks rescissionary relief.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF

114.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

115.    An actual controversy has arisen and now exists between J&M Plastics and Class Members, on the one hand, and MidAmerican, on the other, concerning costs and prices charged for electricity during and because of the winter storm.

116.    Plaintiffs contend MidAmerican charged customers additional costs and excessive prices during the winter storm and acted unconscionably.

117.    Furthermore, pursuant to the terms of the Agreement, MidAmerican has charged consequential damages that are prohibited under the Agreement.

118.    Therefore, J&M Plastics requests the Court declare MidAmerican's conduct unlawful to prevent future controversies that would allow for continued injustices such as the present one, where an essential service provider took advantage of customers and consumers and continues to threaten its customers with electricity termination and additional damages.

119.    Plaintiffs further seek an injunction enjoining MidAmerican from (1) any engagement in the unlawful conduct of charging customers additional costs and excessive prices during and because of the winter storm; (2) from billing and collecting payments from customers charged with additional costs and excessive prices during and because of the winter storm and ordering MidAmerican to fully forgive any late or non-payments associated with such bills, including removing any negative credit reporting and penalties, and to refund any payments

already made on such bills; and (3) from disconnecting electricity services due to non-payment of a bill charging additional costs and excessive prices during and because of the winter storm.

## PRAYER FOR RELIEF

WHEREFORE, J&M Plastics, individually and on behalf of all others similarly situated, request relief and judgment against MidAmerican as follows:

a.  Certification of the proposed Class;

b.  Appointment of the undersigned as counsel for the proposed Class;

c.  For a judgment against MidAmerican for the causes of action alleged against it;

d.  For all available damages in an amount to be proven at trial;

e.  For a declaration that MidAmerican conduct as alleged herein is unlawful and in breach of its contracts with J&M Plastics and Class Members;

f.  Imposition of a constructive trust, an order granting restitution, injunctive relief, and other such equitable relief the Court deems just and proper;

g.  For all available contractual, actual, statutory, and treble damages;

h.  For exemplary and punitive damages;

i.  For loss of credit and loss of goodwill;

j.  For rescissionary relief;

k.  For pre-judgment and post-judgment interest at the maximum rate permitted by law;

l.  For Plaintiffs' reasonable attorneys' fees, costs, and expenses; and

m.  For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

August 25, 2021

Respectfully submitted,

*/s/ Derek H. Potts*
**Derek H. Potts**
Texas Bar No. 24073727
**T. Micah Dortch**
Texas Bar No. 24044981
**J. Ryan Fowler**
Texas Bar No. 24058357
**THE POTTS LAW FIRM, LLP**
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Telephone: (713) 963-8881
Email: dpotts@potts-law.com
Email: mdortch@potts-law.com
Email: rfowler@potts-law.com

*/s/ Brent Cooper*
**R. Brent Cooper**
Texas Bar No. 04783250
**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Email: brent.cooper@coopersculy.com

**ATTORNEYS FOR PLAINTIFFS**