UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| J&M PLASTICS, INC.,<br>Individually and on Behalf of<br>all Others Similarly Situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>MIDAMERICAN ENERGY<br>SERVICES, LLC,<br><br>*Defendant.* | § § § § § § § § § § § § § | <br><br><br><br><br>CASE NO. 2:21-cv-00206-JRG<br><br><br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION FOR LIMITATIONS ON DEFENDANT'S *EX PARTE*
COMMUNICATIONS WITH POTENTIAL CLASS MEMBERS
AND INCORPORATED MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Certified Roses, Inc. and 502 Scenic Drive LLC, Individually and on Behalf of all Others Similarly Situated, ("Plaintiffs) file this Motion for Limitations on Defendant's *Ex Parte* Communications with Potential Class Members and Incorporated Memorandum in Support ("Motion"), move for entry of the order attached as **Exhibit A**, and in support respectfully submit as follows:

## I.    INTRODUCTION

Defendant has been abusing its ongoing business relationships with Plaintiffs, who are putative class members. Defendant has sought out and executed settlement agreements and releases without disclosing the pending class action lawsuit. Plaintiffs request that the Court provide oversight pursuant to Federal Rule of Civil Procedure 23 and limit Defendant's ability to continue to act and communicate with Plaintiffs in this manner.

## II. FACTUAL BACKGROUND

Plaintiffs contracted with Defendant to provide electricity on a fixed rate plan. Ex**. B**, MidAmerican Contract. Months after Winter Storm Uri of February 2021 transpired, Plaintiffs received an invoice with Supplemental Ancillary Services charges for each day of the storm, amounting to an outrageous and unexpected additional charge for electricity usage. Plaintiffs purportedly incurred these charges even though they minimized electricity consumption or were completely shut down due to the winter storm. Many Plaintiffs have continued to pay MidAmerican for their electricity usage, except for the Supplemental Ancillary Services charges amount that they dispute. J&M Plastics filed a putative class action lawsuit on June 8, 2021, to rectify the situation after MidAmerican refused to cooperate and eliminate the disputed charges.

More recently, Plaintiffs have become aware of Defendant's strategy to undermine the proposed class action. Defendant has threatened and sent out notices of termination to Plaintiffs and/or offered a discount on the disputed amount and executed settlement agreements and releases with such terms. Defendant's strategy has forced Plaintiffs to unknowingly waive their legal rights under the class action when confronted with a notice of termination that disconnects their electricity supply.

In August 2021, Defendant, through its sales representatives and automated messages, contacted customers to threaten disconnection and to persuade its customers to pay the disputed amount—enticing them with a discount. Ex. **C**, Sample MidAmerican Communication.[1] Some

---

[1] The emails from Defendant were sent to potential class members. As described in the first email thread, Defendant initiated a discussion with the potential class member to resolve the bill dispute. Potential class member knew of the threat of disconnection. Defendant later offered a discount on the disputed amount and presented the potential class member with a Settlement Agreement and Release (Ex. E). As described in the second email thread, Defendant sent a disconnection notice to which the potential class member immediately reacted to and paid off the *entirety* of the disputed amount just to avoid disconnection.

potential class members received actual disconnect notices. Ex. **D**, Sample Disconnect Notice. By threatening disconnection, some potential class members were forced into paying the entire disputed amount or into agreeing to a discount and settlement agreement and release. Ex. **C**; Ex. **E**, Sample MidAmerican Settlement Agreement and Release. The settlement agreements and releases made no mention of the class action lawsuit and waiver of potential class members' legal rights and invoked New York law to govern:

> **Consideration**
> 1. In consideration of ▇▇▇ the receipt and sufficiency of which consideration is acknowledged, ▇, on its own behalf and on behalf of its heirs, legal representative, successors, administrator and assigns, hereby releases and forever discharges MES together with its insurers, affiliates, officers, directors, agents, and employees, past and present, in their individual and official capacities, from all manner of action, debts, accounts, bonds, contracts, claims and demands which have been or may be sustained as a consequence of the failure of ▇ to repay in full the disputed debt owed to MES described below.
>
> . . .
>
> **Governing Law**
> 10. This Agreement will be construed for all purposes in accordance with the law of the State of New York exclusive of its conflict of laws principles.

Ex. E. Defendant never disclosed the pending class action to any potential class members. Ex. C, E. Such communications with potential class members are improper and should be limited.

### III.   ARGUMENT AND AUTHORITIES

The Court is authorized to regulate communications with potential class members prior to class certification. *See* Fed. R. Civ. P. 23(d). Courts regulate communications to prevent abuse or the threat of abuse. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981) (affirming the standard adopted by the Fifth Circuit Court of Appeals*); see also Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239, 242–45 (E.D. Tex. 1997) (adopting a similar analysis). Direct communication with potential class members often leads to abuse and the need for regulated communications. *See Gulf Oil Co.*, 452 U.S. at 99–100; *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202–03 (11th Cir. 1985) (upholding an order prohibiting informal contact with class members);

*Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 159 (D.D.C. 2002), *reconsideration denied*, 217 F.R.D. 235 (2003) (limiting settlement discussions with potential class members, such as maintaining the accuracy of sales representatives' scripts to preclude misleading information); *Hampton Hardware Inc. v. Cotter & Co.*, 156 F.R.D. 630, 635 (N.D. Tex. 1994) (restricting contact with potential class members "in any manner with regard to the instant litigation").

For example, in *Ralph Oldsmobile, Inc. v. GMC*, the defendant attempted to obtain releases from potential class members without informing them that a proposed class action had been filed. 99 Civ. 4567, 2001 U.S. Dist. LEXIS 13893 (S.D.N.Y. Sep. 7, 2001). The plaintiff claimed the defendant's communication with potential class members was coercive and inadequate to ascertain the rights waived by the releases. *Id.* at *6. The court agreed and found "potential coercion and potentially unknowing waivers of the rights asserted in this action." *Id.* at *7. After balancing these findings against the need to limit speech, the court concluded that a potential class member's release must be accompanied by notice that class action litigation is pending. *Id.* at *15 (also providing potential class members with the opportunity to nullify signed releases).

Similar to the *Ralph* plaintiff, Plaintiffs identify the abuses by Defendant and bring forth a clear record and specific findings, reflecting a "weighing of the need for a limitation and the potential interferences with the rights of the parties." *Id.* at **4–5. Defendant has acted coercively and/or with the threat of coercion. The relationship between potential class members and defendant in an ongoing business relationship has been found to be "inherently coercive*.*" *Id.* at *10 (internal citation omitted). Plaintiffs and Defendant are in an ongoing business relationship and are allegedly bound by a contract for Defendant to provide electricity services. Ex. B. Electricity is an essential utility, and Plaintiffs rely on Defendant's services to power their businesses. Plaintiffs

are essentially trapped. By not paying the disputed portion of the invoice, Plaintiffs put their entire business livelihood on the line and risk: termination of services and disconnection of electricity; accrued late payment charges; and debt collection and further legal action. Ex. B, D. Defendant retains leverage over Plaintiffs as evidenced by the potential class members who have been threatened with disconnect notices and have agreed to discounts and settlement agreements and releases solely to avoid the repercussions of non-payment. Ex. C–E. Defendant's communications with Plaintiffs are wholly incomplete, inaccurate, misleading, and coercive.

Defendant has also acted inadequately to waive the rights of potential class members. Defendant has not communicated about the class action in the settlement agreements and releases and conversations and status updates with potential class members. Ex. C–E. Plaintiffs risk signing the release without adequate notice and information to know the extent of their legal rights, particularly those rights afforded by the proposed class action. Ex. E; *see also Keystone Tobacco Co.*, 238 F. Supp. 2d at 155 (detailing a three-prong test to determine obfuscation and to determine whether a settlement offer contains sufficient information).

Plaintiffs occupy a vulnerable position and to permit Defendant to communicate with Plaintiffs in the ways described is to expose Plaintiffs to serious abuse. Defendant's communications have chilled potential class members participation in the proposed class action. Plaintiffs request that the Court regulate communications in the appropriate manner. *See Ralph Oldsmobile, Inc.*, 99 Civ. 4567, 2001 U.S. Dist. LEXIS 13893, at **4–5.

Plaintiffs suggest that potential class members be informed of the pending class action lawsuit by ordering Defendant to:

(1) cease settlement agreements and releases negotiations with potential class members until an appropriate communication procedure has been implemented, such as:

(a) disclosing the class action lawsuit, including in all settlement agreements and releases and conversations relating to any claims in the class action lawsuit by, at minimum:

- Disclosing the caption and number of the case;
- Identifying the parties to the case and the parties' legal representatives;
- Providing an impartial summary of the allegations in the case and a copy of the live complaint; and
- Explaining the consequences to potential class members if they were to provide any information or take any requested action; and

(b) send notice to potential class members of the class action lawsuit;

(2) provide an opportunity for potential class members who signed settlement agreements and releases to void the settlement agreements and releases; and

(3) provide Plaintiffs' counsel with the opportunity and necessary information to send notices and further information to all potential class members.

## IV.   CONCLUSION

Plaintiffs request that the Court grant this Motion for Limitations on Defendant's *Ex Parte* Communications with Potential Class Members and Incorporated Memorandum in Support and sign the order attached as Exhibit A.

Dated: September 7, 2021

Respectfully submitted,

*/s/ Derek H. Potts*
**Derek H. Potts**
Texas Bar No. 24073727
**T. Micah Dortch**
Texas Bar No. 24044981
**J. Ryan Fowler**
Texas Bar No. 24058357
**POTTS LAW FIRM, LLP**
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Tel: (713) 963-8881

*/s/ R. Brent Cooper*
**R. Brent Cooper**
Texas Bar No. 04783250
**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Telecopy:  (214) 712-9540

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF CONFERENCE

The undersigned certifies compliance with Local Rule CV-7(h) and that on September 3, 2021, Plaintiffs' counsel contacted Defendant's counsel to reached an agreement on the Motion but could not reach an agreement with Defendant's counsel prior to filing the Motion.

*/s/ Derek H. Potts*
Derek H. Potts

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 7, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Derek H. Potts*
Derek H. Potts